.IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUAN J. TORRES, | ) |
|         Plaintiff, | ) |
| vs. | ) Case No. 3:19-CV-299-MAB |
| BOBBY BLUM and ROB JEFFREYS, | ) |
|         Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendant Bobby Blum (Doc. 33). For the reasons set forth below, the motion is denied.

### PROCEDURAL BACKGROUND

Plaintiff Juan Torres is an inmate in the Illinois Department of Corrections and currently incarcerated at Pinckneyville Correctional Center. On March 13, 2019, he filed a lawsuit pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (Doc. 1). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims:

    **Count 1:** Bobby Blum violated the Eighth Amendment when he was deliberately indifferent to Plaintiff's urinary tract infection.

    **Count 2:** The IDOC violated the ADA and RA by failing to have handicap accessible bathrooms on the yard.

(Doc. 8).

Defendant Bobby Blum filed a motion for summary judgment in October 2019, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit (Docs. 33, 34).[1] According to Defendant Blum, there is only one relevant grievance: grievance #07-70-18, which was dated June 23, 2018 (Doc. 34; Doc. 34-4, pp. 21–26). Defendant Blum argues this grievance is insufficient to exhaust Plaintiff's claim against him because Plaintiff failed to adequately identify Blum in the grievance and the grievance was filed outside the 60-day timeframe prescribed by the grievance procedures (Doc. 34). Plaintiff filed a response in opposition to the motion for summary judgment (Doc. 38). Defendant Blum did not file a reply brief.

An evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was initially scheduled for March 31, 2020 (Doc. 46). The hearing was postponed multiple times, however, as the COVID-19 pandemic in the United States intensified and the Court's operations were significantly restricted (Docs. 55, 59, 61). The hearing was ultimately rescheduled for August 19, 2020 (Doc. 57). However, after closer review of the parties' briefs, the Court has determined there are no issues of fact and a hearing is not necessary.

## LEGAL STANDARDS

### *Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R.

---

[1] Defendant Rob Jeffreys did not move for summary judgment on the issue of exhaustion.

Civ. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). Accord *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). No hearing is necessary when there is no disputed issue of fact.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see*

*also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The regulations first require an inmate to send the grievance to their counselor within 60 days of the incident, occurrence, or problem that gave rise to the grievance. *Id.* at § 504.810(a).[2] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id.* at § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination. *Id.* at § 504.850(d), (e).

## FACTUAL BACKGROUND

In the complaint, Plaintiff alleged that he is wheelchair bound and uses catheters to urinate (Docs. 1, 8). He further alleged that in January 2018, he ran out of catheters and lubricating jelly on two occasions and was forced to reuse old catheters and spit on the catheters for lubrication before inserting them (Docs. 1, 8). As a result, Plaintiff developed a urinary tract infection (UTI) (Docs. 1, 8). Nurse Practitioner Bobby Blum met with Plaintiff in late January and informed him of the UTI (Docs. 1, 8). Blum allegedly refused

---

[2] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

to prescribe Plaintiff any medication for the infection, however, and instead instructed him to drink lots of water (Docs. 1, 8). Plaintiff alleges that he submitted additional urine samples on two occasions in March 2018, which showed that he still had the urinary tract infection (Docs. 1, 8).

The only relevant grievance is #07-70-18, which was dated June 23, 2018 (Doc. 34; Doc. 34-4, pp. 21–26). In the grievance, Plaintiff indicated that he was sent to an outside hospital on May 16, 2018 because his blood pressure was high and he had chest pains (Doc. 34-4, pp. 21–26). While at the hospital, a urinalysis was done, which was positive for a UTI (*Id.*). Plaintiff stated that he previously had a urinalysis at Pinckneyville on January 23, 2018, which showed that his white blood cells "was 22, which means that its high and that I have a infection" (*Id.*). Two days later, he "saw the nurse petitioner," who "did nothing about the infection. The nurse petitioner should've order[ed] medication for the infection" (*Id.*). Another urinalysis on March 8, 2018 at Pinckneyville showed that his white blood cells "was 8, which means that it[s] high and I have a urine infection" (*Id.*). He saw Dr. Butalid ten days later, who did nothing for the infection (*Id.*). Plaintiff asserts that because the "nurse petitioner" and Dr. Butalid did nothing about the UTI, it worsened and made his blood pressure and heart rate increase, which caused his chest pains (*Id.*).

Plaintiff's counselor received the grievance on June 28, 2018 (*see* Doc. 34-4, p. 23). The counselor responded on July 16th, stating:

> Per HCUA: The file reflects that he was treated appropriately. Grievant was sent out in May for chest pain. He had not been to the doctor or nurse sick call for over a month prior to event. Pericarditis can be caused by multiple

> things and the cause is often undetermined. The elevated [white blood cell count] was minimal and did not require antibiotic treatment. Providers will be reminded of the importance of explaining lab results to patients and treatments recommended.

(*Id.*). Plaintiff then sent the grievance to the grievance officer, who received it on July 20th and recommended denying the grievance on July 27th (*Id.* at p. 22). The warden concurred and denied the grievance on August 10th (*Id.*). Plaintiff appealed to the ARB (Doc. 34-4, p. 21). The ARB received the appeal on August 23rd and denied it on October 11th because "the issue was appropriately addressed" by Pinckneyville and because "medical treatment is at the discretion of the provider [and] offender was sent to outside hospital" (*Id.*).

## DISCUSSION

It is undisputed that the June 23rd grievance went through every step of the grievance process. However, Defendant Blum argues that the June 23rd grievance cannot be used to exhaust as to him because the grievance did not name or describe him (Doc. 34, p. 6). The grievance identified a nurse practitioner as the subject, but Blum is a physician's assistant (*Id.*). Therefore, according to Blum, he had no notice that he was the subject of Plaintiff's grievance nor an opportunity to address his handling of Plaintiff's lab results (*Id.*). Defendant Blum argues in the alternative that the June 23rd grievance cannot be used to exhaust as to him because it was filed more than 60 days after the appointment at issue and was therefore untimely (*Id.* at pp. 6–7). The Court is unpersuaded by both of Defendant Blum's arguments.

Grievances are intended to give prison officials notice of a problem and a chance

to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . [E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action.") (internal quotation marks and alterations omitted; citation omitted); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.")

While the Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, 20 ILL. ADMIN. CODE § 504.810(c) (2017), the grievance form Plaintiff used only asked for a "brief summary of grievance" (Doc. 34-4, p. 23). There was no indication on the form that names had to be provided (*see id.*). In this circumstance, the Seventh Circuit has held that the omission of names or identifying information does not mean that the prisoner failed to exhaust his administrative remedies so long as the grievances still gave prison administrators a fair opportunity to address the prisoner's complaints. *Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir. 2011). *Accord Jackson v. Shepherd*, 552 Fed. Appx. 591, 593 n.1 (7th Cir. 2014); *Conley v. Anglin*, 513 Fed. Appx. 598, 601 (7th Cir. 2013).

Plaintiff indicated in the grievance that he saw a "nurse petitioner" on January 25, 2018 regarding the results of his urinalysis and that the "nurse petitioner" declined to prescribe him any treatment (Doc. 34-4, pp. 23–26). Regardless of what title Plaintiff used for the medical provider, his grievance provided more than enough information for prison officials to identify the medical provider by name. In short, all prison officials needed to do was look at Plaintiff's medical records. And the counselor's response to the grievance makes clear those records and the Health Care Unit Administrator were consulted in order to respond to the grievance. Therefore, it stands to reason that prison officials at Pinckneyville were well aware of the identity of the medical provider who was the subject of Plaintiff's grievance. Under these circumstances, Plaintiff's failure to specifically name PA Blum had no effect on the process and did not limit the usefulness of the exhaustion requirement. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

Furthermore, Plaintiff's June 30th grievance was never rejected as procedurally deficient because Plaintiff had not adequately identified the medical provider or because it was untimely. Rather, it was accepted and denied on the merits at every stage of the grievance process. "A procedural shortcoming," like failing to specifically name each person who is the subject of the grievance or failing to adhere to deadlines, "amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Maddox*, 655 F.3d at 721 (quoting *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005)). "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust

defense." *Maddox*, 655 F.3d at 721 (citing *Conyers*, 416 F.3d at 585); *accord Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) ("[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action."). Because neither the prison nor the ARB rejected the June 23rd grievance for being procedurally deficient, Defendant Blum cannot now rely on those deficiencies in arguing that Plaintiff failed to exhaust.

For these reasons, Defendant Blum's motion for summary judgment on the issue of exhaustion is denied. As a final note, the Court apologizes for taking so long to issue an Order on this motion. The Court's usual practice when a motion for summary judgment on the issue of exhaustion is filed is to review the briefing and determine whether a *Pavey* hearing is necessary and then set the hearing. It doesn't seem that the usual practice was followed in this case, and the hearing was set (and then repeatedly continued due to the COVID-19 pandemic) before the briefing had been reviewed. It wasn't until the Court started preparing for the *Pavey* hearing that it realized a hearing was not actually necessary and an Order could have been issued months ago.

## Conclusion

The motion for summary judgment on the issue of exhaustion filed by Defendant Bobby Blum (Doc. 33) is **DENIED**.

This matter will proceed on Counts 1 and 2 (*see supra* p. 1). The stay on discovery on the merits of Plaintiff's claims (*see* Doc. 30) is **LIFTED**, and the parties can proceed with discovery. A new schedule will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: August 14, 2020**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**
